UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
UNITED STATES OF AMERICA            :
                                    :   Crim. No. 14-50 (NLH)
                                    :
     v.                             :
                                    :
KAREEM BAILEY,                      :   **OPINION**
                                    :
          Defendant                 :
_____:


**APPEARANCES**:

LOUISE ARKEL
FEDERAL PUBLIC DEFENDER
972 BROAD ST.
NEWARK, NJ 07102

     *Counsel for Kareem Bailey*


PATRICK C. ASKIN
OFFICE OF THE US ATTORNEY
401 MARKET STREET
4TH FLOOR
CAMDEN, NJ 08101

     *Counsel for the United States*


**Hillman**, District Judge

     Before the Court is Kareem Bailey's ("Defendant") Motion

for Reduction of Sentence under the First Step Act, 18 U.S.C. §

3582(c)(1)(A).[1]  (ECF 1055).  For the reasons expressed below, the motion will be denied.

**Background**

On January 16, 2015, Defendant was found guilty by a jury of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin within 1000 feet of a public housing complex, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 21 U.S.C. §§ 846 and 860.  (See ECF 652).  He was also convicted of possession and discharge of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii) and (iii) and 18 U.S.C. § 2.  (Id.)  Finally, Defendant was convicted of six counts of use of a communication facility to further a drug conspiracy in violation of 21 U.S.C. § 843(b).  (Id.)  After calculating an advisory sentencing guidelines range of 271 to 308 months, the Honorable Joseph E. Irenas varied down two levels and sentenced the Defendant to 241 months of incarceration and a 10-year term of supervised release On May 1, 2015.[2]  (Id.)

On February 10, 2021, Defendant filed the instant motion for a reduction in sentence based on the COVID-19 pandemic under

---

[1] Also before the Court is Defendant's unopposed motion to extend the deadline for him to file his reply brief to December 5, 2022.  (ECF 1176).  The Court will grant that motion nunc pro tunc.

§ 3582(c)(1)(A) of the First Step Act.  (ECF 1055).  The Government filed a brief in opposition to the motion on August 10, 2022. (ECF 1154).  Thereafter, on December 5, 2022, Defendant filed a counseled reply brief. (ECF 1177).  The Court considers the motion against this procedural and factual backdrop.

**Discussion**

   A. **Legal Standard for Compassionate Release**

"The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons.'" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)).  Before bringing a motion for reduced sentence before the sentencing court, defendants first "must ask the Bureau of Prisons to do so on their behalf, give the BOP thirty days to respond, and exhaust

---

[2] The Court determined that Defendant was in Criminal History Category III and the adjusted offense level for the drug conspiracy was a level 32.  This resulted in a range of 271 to 308 months which consisted of 151 to 188 months for the drug conspiracy plus a mandatory consecutive sentence of 120 months for discharge of a firearm before any departures or variances. After adjusting for a two level variance, Judge Irenas reduced the advisory range to 241 to 271 months (121 to 151 + 120) and chose the bottom of the advisory guideline range. Defendant's sentence for his convictions on the counts related to use of a telephone to further a drug trafficking conspiracy under 21 U.S.C. § 843(b) was 48 months each to run concurrently with one another and the count for trafficking one kilogram of heroin and thus did not affect Defendant's total incarceration time.  (See ECF 652).

any available administrative appeals." Id. "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." United States v. Sellers, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(C)(1)(A)); see also Raia, 954 F.3d at 595.

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) if after finding extraordinary and compelling reasons warrant a reduction, that such a reduction would be consistent with applicable policy statements issued by the Sentencing Commission and that the applicable sentencing factors under § 3553(a) warrant a reduction. United States v. Pabon, 458 F. Supp. 3d 296, 300 (E.D. Pa. 2020).

B. **Analysis of Motions for Compassionate Release**

    a. **Defendant has satisfied the exhaustion requirements**

Defendant applied to the BOP for compassionate release on May 8, 2020 and was denied on May 18, 2020.[3]  (ECF 1154-5).  The Government does not dispute that Defendant has exhausted his

---

[3] Defendant again applied to the BOP for compassionate release on July 1, 2021 and was denied on July 19, 2021.  (ECF 1154-6).

4

administrative remedies. (Id.) Thus, the Court deems the administrative exhaustion requirement for his motion to be satisfied.

### b. Defendant fails to establish "extraordinary and compelling reasons" for his release

The Court holds that Defendant has not established "extraordinary and compelling reasons" for his release. Defendant argues that his pre-existing medical conditions place him at a high risk for complications from COVID-19. In addition, he argues that his age, his difficult upbringing, the length of his sentence, the fact that Judge Irenas was statutorily constrained from imposing a lower sentence on him, that Defendant was a juvenile at the time that he committed the offenses in this matter, and that the Supreme Court's decision Rehaif v. United States, 139 S. Ct. 2191 (2019) constitute "extraordinary and compelling reasons" for his release.

With regard to medical conditions, Defendant argues that he is at an increased risk for an adverse outcome if he contracts COVID-19 due to his underlying health conditions of pre-diabetes and hypertension. (ECF 1055 at 4). Defendant also seems to argue that his age puts him at an increased risk for suffering negative outcomes if he contracts COVID-19. (Id.)

The Government disagrees that Defendant presents "extraordinary and compelling reasons" based on his age and

5

medical conditions.  (ECF 1154 at 4-5).  They argue that the conditions that Defendant has are insufficient to necessitate immediate release, even during the pandemic.  (Id. at 13-17).  More specifically, they argue that Defendant's medical records show that his conditions are being adequately managed by the BOP.  (Id.)  The Government highlights that Defendant's cited medical conditions do not warrant the significant reduction in sentence that Defendant is requesting.  (Id.)  Finally, they highlight the steps that the BOP has taken to manage the COVID-19 pandemic including testing, social distancing, vaccinations, and designating qualifying inmates for home confinement.  (Id. at 5-7).

The Court does not take lightly the difficulties that Defendant's medical conditions place on him particularly while in prison.  But Defendant has not sufficiently shown how his particular medical conditions, either individually or in combination, pass the extraordinary and compelling threshold given BOP's efforts at minimizing the risk of transmission in the current environment. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

The applicable guidance from the Sentencing Commission falls under Comment 1 under § 1B1.13 of the guidelines. U.S.S.G. § 1B1.13, cmt. n.1(A).[4]  The Court cannot say that Defendant suffers from conditions that fall into the same categories as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia[,]" examples offered by the Sentencing Commission of the types of illnesses that might constitute "extraordinary and compelling circumstances." Id.  It also cannot say that Defendant's conditions substantially "diminish[] the ability of [Defendant] to provide self-care within the environment of a correctional facility and from which he...is not expected to recover." Id.  Defendant has not shown that he cannot manage his medical conditions while incarcerated.  (See generally ECF 1055).

While the Centers for Disease Control and Prevention (the "CDC") have identified hypertension as a risk factor associated

---

[4]  While the Court looks to § 1B1.13 as directed to by the statute, it is not, standing alone, a determinative factor in light of a lack of quorum which has prevented the Sentencing Commission from updating § 1B1.13 in response to the First Step Act.  That said, the Third Circuit has approved a district court's consideration of § 1B1.13 when it comes to evaluating motions for compassionate release filed by prisoners. United States v. Andrews, 12 F.4th 255, 260 (3d Cir. 2021), cert. denied, No. 21-1208, 2022 WL 994375 (U.S. Apr. 4, 2022) ("The court correctly recognized that although the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons.").

with COVID-19,[5] courts have held that the mere fact that a defendant has that condition is not enough to warrant compassionate release. United States v. Brashear, 2021 WL 5239119, at *3 (D.N.J. Nov. 10, 2021) ("Despite the risk of COVID-19, multiple decisions in the Third Circuit, and multiple decisions in this District, have denied compassionate release to inmates suffering from obesity, hypertension, and/or other health issues."). In addition, pre-diabetes is not recognized by the CDC a risk factor associated with COVID-19. United States v. Martinez, No. CR 17-171 (SRC), 2021 WL 2651663, at *2 (D.N.J. June 28, 2021) ("Pre-diabetes is not a CDC-recognized comorbidity factor."). Similarly, Defendant's relatively young age, currently 29, and 19 at the time of the conspiracy is not "extraordinary and compelling" without more. United States v. Augustin, No. 20-3609, 2021 WL 6059564, at *1 (3d Cir. Dec. 20, 2021) ("Augustin also argued that his youth and age, as well as his efforts to rehabilitate himself in prison, constituted extraordinary and compelling reasons for release. However, the District Court appropriately noted that Augustin's youth and age were already considered at sentencing[.]"). Defendant's rehabilitation efforts, while laudable, do not rise to the level

---

[5] CENTERS FOR DISEASE CONTROL AND PREVENTION, COVID-19, PEOPLE WITH CERTAIN MEDICAL CONDITIONS, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 7, 2022).

of an "extraordinary and compelling reason" on their own. United States v. McNair, 481 F. Supp. 3d 362, 370 (D.N.J. 2020) ("[T]he Policy Statement makes clear that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason.") (citing 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.")).

Defendant is also fully vaccinated and boosted against COVID-19. (ECF 1154 at 14). Further, FDC Philadelphia, where Defendant is housed, has mitigation efforts aimed at controlling the spread of the coronavirus that appear to be effective. Currently, FDC Philadelphia has no active inmate positive tests and four staff positive tests.[6] Over the course of the pandemic, no FDC Philadelphia inmates have died as a result of infection by COVID-19, and 464 inmates have recovered from positive infections.[7]

In addition, according to the BOP, 1,235 inmates at FDC Philadelphia have been fully vaccinated.[8] Given the well-

---

[6] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19, https://www.bop.gov/coronavirus/ (last visited December 7, 2022).

[7] Id.

[8] Id.; The population of FDC Philadelphia is currently listed as 885 inmates. FEDERAL BUREAU OF PRISONS, FDC PHILADELPHIA, https://www.bop.gov/locations/institutions/phl/ (last visited December 7, 2022). It is not clear whether or not the figure

9

established and accepted evidence that the available vaccines are both safe and effective, the Court believes that the vaccination rate inside FDC Philadelphia weighs against Defendant's request for relief.

The effective management of Defendant's conditions by the BOP and FDC Philadelphia's efforts at controlling the spread of COVID-19, taken together, undermine any finding that this Defendant presents "extraordinary and compelling reasons" for his release.

With respect to Defendant's other arguments, that his acts as a minor should not have been admissible at trial and that his trial ran afoul of Rehaif v. United States, 139 S. Ct. 2191 (2019) in that the jury instructions did not require that a finding that he "knowingly" possessed a firearm, they are not properly raised here.  Defendant's evidentiary arguments and arguments on jury instructions are not cognizable on a motion for compassionate release.  Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002) ("Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions[.]"); United States v. Reed, No. CR 06-193, 2021 WL 914203, at *4 (W.D. Pa. Mar. 10, 2021), appeal

---

for vaccinations is higher than the current inmate population because inmates have been transferred to other facilities or released.  In any case, it is clear that the vaccination rate is high at the facility.

dismissed, No. 21-1720, 2021 WL 4808011 (3d Cir. July 21, 2021), and reconsideration denied, No. CR 06-193, 2022 WL 1120046 (W.D. Pa. Apr. 14, 2022) ("[E]ntertaining a *Rehaif* challenge to the legitimacy of a conviction through Section 3582(c)(1)(A) would amount to the circumvent[ion] [of] the strictures of § 2255 by relying on § 3582(c)(1)(A).") (internal quotation marks omitted).

Finally, with respect to Defendant's argument that Judge Irenas would have imposed a lower sentence but for the statutory minimum, that argument has been neatly rejected by the Third Circuit. United States v. Andrews, 12 F.4th 255, 260-61 (3d Cir. 2021) ("The duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance."). Defendant argues that Andrews is distinguishable in the sense that his request "is not about the duration of his sentence, but about the fact that the statutes limited consideration of a critical mitigating circumstance[,]" namely Defendant's age and development at the time of his conviction. (ECF 1177 at 6). Defendant argues that the statutory mandatory minimum for Defendant's offenses did not allow Judge Irenas to fully account for Defendant's youth and development and thereby impose a lower sentence. (Id.) To draw that distinction here is splitting hairs.

11

In Andrews, the Third Circuit was dealing with a case completely within the realm of the present one: one where a statutory mandatory minimum prevented the district court from imposing a sentence below a certain floor. Andrews, 12 F.4th at 260-61. Also notable is the fact that here, Defendant's statutory mandatory minimum has not changed since the time of his sentencing in that it is still 20 years or 240 months. 21 U.S.C. § 841(b)(1)(A) (minimum of 10-year term of imprisonment for trafficking 1 kilogram or more of heroin); 18 U.S.C. § 924(c)(1)(A)(iii) (consecutive 10-year term of imprisonment required for discharge of a firearm in connection with a drug trafficking crime); (ECF 1154-1 at 33:18 – 34:9). Defendant was sentenced to 241 months of imprisonment, (ECF 1154-1 at 33:18 – 34:9), which was only one month greater than the statutory minimum.[9] Thus, The Court declines to find that Defendant has shown an "extraordinary and compelling reason" justifying his release.

---

[9] The fact that Defendant was sentenced above the mandatory minimum of 240 months (120 months for the drug conspiracy and 120 months for the firearm count), even one month above, undercuts any argument Judge Irenas would have sentenced the Defendant below the mandatory minimums if he were able. Nothing prohibited Judge Irenas from varying below the statutory minimum sentence when calculated the extent of a variance. For example, Judge Irenas could have varied down three levels and calculated the range for the drug conspiracy to be 120 months and sentenced him for that count to that term of years. The fact that he chose not to undermines any contention he would have sentenced Defendant below the mandatory minimum if he had been able.

12

### c. 3553(a) factors weigh against Defendant's favor

Even if Defendant could "establish extraordinary and compelling reasons" for his release, the Court may reduce an inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction. Here, they do not.

The Court sees no reason to disturb the sentence previously imposed by Judge Irenas. As he noted at the time of sentencing, the size and sophistication of the drug distribution scheme that underlies Defendant's conviction shows the seriousness of Defendant's offense. 18 U.S.C. § 3553(a)(2)(A); (ECF 1154-1 at 24:23 – 26:20). Indeed, in imposing Defendant's sentence, the Court noted that while Defendant's history and characteristics were a mixed bag, it was concerning that Defendant had "zero work history" and a "pretty great" risk of recidivism. 18 U.S.C. § 3553(a)(1) and (a)(2)(C); (ECF 1154-1 at 26:21- 29:19).

Deterrence, both specific and general, also militates against release given the magnitude of drugs at issue and the fact that Defendant has brushes with the law in the past. 18 U.S.C. § 3553(a)(2)(B). Finally, just as Judge Irenas found at sentencing, the fact that the BOP offers educational and rehabilitation programming cuts against granting Defendant's motion. 18 U.S.C. § 3553(a)(2)(D); (ECF 1154-1 at 30: 2-10). Moreover, reducing Defendant's sentence now when he already received a two-level variance at sentencing down to only one

13

month above the statutory minimum would create an unwarranted sentencing disparity between similarly situated Defendants. 18 U.S.C. § 3553(a)(6); (ECF 1154-1 at 3:23 -4:5). The advent of COVID-19 does not change the balance in Defendant's specific situation where he has not shown that he is at a materially increased risk of serious illness or death while incarcerated and that there has been a material difference in the § 3553(a) factors that animated his current sentence. Thus, the Court declines to grant Defendant's motion for compassionate release on the basis of COVID-19.[10]

**Conclusion**

For the reasons set forth above, Defendant's Motion for Reduction of Sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A) (ECF 1055) will be denied. Defendant's request to extend the deadline for him to file his reply brief to December 5, 2022 (ECF 1176) will be granted nunc pro tunc.

An accompanying Order will issue.

Dated: December 12, 2022         s/   Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

---

[10] Implicit in this denial is a denial of Defendant's request for a hearing. Fed. R. Crim. P. 43(b)(4) (stating that defendants are not entitled to be present for a hearing for a motion for correction of sentence under 18 U.S.C. § 3582(c)).